# United States Court of Appeals
## For the First Circuit

No. 04-1480

HORIZON BANK & TRUST CO.,

Plaintiff, Appellee,

v.

COMMONWEALTH OF MASSACHUSETTS, DEPARTMENT OF REVENUE,

Defendant, Appellant,

PAUL FLAHERTY, Trustee of Custom House Associates Realty Trust;
CUSTOM HOUSE ASSOCIATES LIMITED PARTNERSHIP; SUSAN MANNING,
Trustee of Custom House Associates Realty Trust; UNITED STATES OF
AMERICA, INTERNAL REVENUE SERVICE; GIARRUSSO, NORTON, COOLEY, AND
McGLONE, P.C.; and EASTERN BANK,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, <u>U.S. District Judge</u>]

Before

Lynch, <u>Circuit Judge</u>,
Leval,[*] <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

    <u>Thomas A. Barnico</u>, Assistant Attorney General, with whom
<u>Thomas F. Reilly</u>, Attorney General, and <u>Eileen Ryan McAuliffe</u>,

[*]Of the Second Circuit, sitting by designation.

Counsel, Department of Revenue, were on brief, for defendant, appellant Commonwealth of Massachusetts, Department of Revenue.

Thomas J. Clark, Attorney, Tax Division, with whom Eileen J. O'Connor, Assistant Attorney General, and Randolph L. Hutter, Attorney, Tax Division, were on brief, for defendant, appellee United States, Internal Revenue Service.

———————————————

December 8, 2004

———————————————

**LYNCH**, **Circuit Judge**.  On the merits this case presents very difficult issues under the Eleventh Amendment about whether the United States, asserting a tax claim, may remove an interpleader action to federal court when an unconsenting state, which is also a party with its own tax claim, asserts its Eleventh Amendment immunity and argues that it is an indispensable party.  We never reach those merits issues because the appeal is moot.  The state has conceded that two other creditors including the United States have superior claims, and that satisfaction of those claims leaves no remaining assets to satisfy the state's tax claims.

## I.

Horizon Bank & Trust Company ("Horizon") brought an interpleader action in state court to determine the proper distribution of a surplus pool of money that it had obtained after foreclosing on a piece of property and after satisfying its own monetary interests in that property.  The United States Internal Revenue Service, the Commonwealth of Massachusetts Department of Revenue, and a law firm creditor, Giarrusso, Norton, Cooley, and McGlone, P.C. ("Giarrusso"), holding another mortgage on the same property, were named as defendants.  The United States removed the entire action to federal court.  The Commonwealth then moved to dismiss claims seeking adjudication of the Commonwealth's interest because of its Eleventh Amendment immunity and simultaneously to dismiss the entire interpleader action because it was an

-3-

indispensable party to that action. The issue of indispensability had arisen in Massachusetts federal district courts in several other interpleader actions involving both the United States and the Commonwealth, with varying results.

The court here held that the Commonwealth was entitled, because of its Eleventh Amendment immunity, to dismissal of claims seeking adjudication of its rights relative to those of private parties, but not of adverse claims of the United States. The court ruled that the entire interpleader case need not be thrown out because the Commonwealth was a necessary but not indispensable party under Fed. R. Civ. P. 19. Horizon Bank & Trust Co. v. Flaherty, 309 F. Supp. 2d 178, 184, 198 (D. Mass. 2004). The court simultaneously held, on Giarrusso's motion for summary judgment, that Giarrusso should receive the entire value of its interest in the property, the federal government should receive the remaining funds, a partial but not total satisfaction of its tax liens on the property, and the Commonwealth should receive no money at all. Id. at 198-200.

The Commonwealth, seeking to get an appellate ruling on an issue that had divided the Massachusetts federal district courts, appealed the district court's judgment, arguing that the entire interpleader action should have been dismissed because it was an indispensable party. But the Commonwealth has also stated in its brief and at oral argument to this court that it "does not contest

the District Court's determination of the relative priorities or rights to the surplus funds." Because the Commonwealth has not contested the distribution of funds, no case or controversy remains as required by Article III of the United States Constitution and we hold that the appeal must be dismissed as moot.

## II.

There are no contested facts in the case. Custom House Associates Realty Trust ("Custom House") mortgaged a piece of property to Giarrusso on August 6, 1998, to secure repayment of a promissory note with a principal of $255,960. Custom House subsequently mortgaged the property a second time to Horizon, as security for a $395,000 loan. Giarrusso subordinated its mortgage to Horizon's. The United States filed tax liens against the Custom House property on February 10, 2000, July 18, 2000, and September 14, 2001, in amounts totaling $212,564.46. The Commonwealth Department of Revenue filed three tax liens against the property on December 13, 2002, totaling $257,747.77. Custom House defaulted on its payments to Horizon on or around January 1, 2003, leading Horizon to accelerate all payments due. Horizon ultimately foreclosed on the property, sold it at public auction for $800,000, and satisfied its own debt out of the proceeds.

Horizon filed this interpleader action to determine who owned the remaining funds, $303,153.27. The claim was filed in Massachusetts Superior Court. The United States removed the case

to federal court in the District of Massachusetts pursuant to 28 U.S.C. §§ 1444 and 2410, which give the United States this right in any interpleader action where it has been named as a party.

The Commonwealth then filed a two-part motion to dismiss the entire case. It asserted first that because it had, by state statute, waived its Eleventh Amendment immunity only for cases in state court and not for cases in federal court, it had a right to be dismissed as a defendant from this case on Eleventh Amendment immunity grounds. Second, it argued that once it was dismissed from the case, it must be seen as both a necessary party under Fed. R. Civ. P. 19(a) and an indispensable party under Fed. R. Civ. P. 19(b). If the Commonwealth was indispensable, the case could not go forward at all.

The district court issued an opinion on January 13, 2004, and a judgment two days later; the judgment was amended and a new opinion issued on February 5, 2004. The district court's amended opinion held that the state's Eleventh Amendment immunity applied to the case and had not been waived by the state, so the Commonwealth needed to be dismissed from the action vis-à-vis the private parties. Horizon Bank, 309 F. Supp. 2d at 181-90. The district court also held that any claims between the federal government and the Commonwealth should not be dismissed. Id. at 192-95.

On the issue of indispensability, the court agreed with the Commonwealth that it was a necessary party under Rule 19(a). Id. at 191-92. But it held that the Commonwealth was not an indispensable party. The district court stated that it would craft its judgment so that any relief would only have preclusive effect between the different private parties, between the United States and the private parties, and between the United States and the Commonwealth. The judgment would not carry preclusive effect between the Commonwealth and the private parties. This protective measure, in its view, would ensure that the Commonwealth was not prejudiced by a judgment in which it did not participate. Id. at 194-95.

The court also granted Giarrusso's motion for summary judgment on the claim that it was entitled to $264,942 from the surplus fund, the amount of its debt plus interest. Id. at 199. Indeed, the United States had consented to the motion. Id. Sua sponte, the court resolved the issue of priority on the remaining funds as between the United States and the Commonwealth. Holding that the United States's liens had priority over the Commonwealth's because they were assessed earlier, the court granted summary judgment for the United States for the entire remainder of the funds, $38,211.67, which was only a fraction of the amount of the United States's total tax liens. Id. at 199-200. This distribution meant that the Commonwealth ended up with none of the money.

The Commonwealth appealed the judgment on the grounds that it is an indispensable party and thus the entire action should have been dismissed. But it has not contested the finding that the claims of Giarrusso and the United States are superior to its claim, and that those claims exhaust the fund. Its claim of indispensability hangs on its assertion that despite the district court's efforts to tailor the effects of the judgment, the district court's disposition might have persuasive or binding effect on a later state court, thus prejudicing the Commonwealth, and that hypothetically, there might be more litigation. The state court, it argues, is an adequate alternative forum where all claims of all parties could have been resolved in one attempt instead of the piecemeal approach adopted by the federal court.

The United States, the only other party to file a brief on appeal, argues that the Commonwealth's appeal is moot because the Commonwealth has not challenged the district court's holding that the funds are exhausted by the claims of superior creditors. The United States further argues that even if the claim is not moot, the district court judgment should be affirmed because the Commonwealth never should have received Eleventh Amendment immunity, for two reasons. First, the United States argues that recent Supreme Court precedent, see Tennessee Student Assistance Corp. v. Hood, 124 S. Ct. 1905, 1912-13 (2004), stands for the proposition that an unconsenting state can be sued in an in rem

-8-

action without infringing Eleventh Amendment immunity. And despite recent circuit precedent stating that interpleader actions are in personam, see Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 25 (1st Cir. 2003), this sort of interpleader action should be considered in rem. Second, the United States notes that even though a private party (Horizon) originally brought this action in state court, it was the United States that removed it to federal court, triggering the Eleventh Amendment immunity bar. Thus, we should treat this case as though the United States were the plaintiff suing the Commonwealth, and Eleventh Amendment immunity does not apply when the United States sues a state. See United States v. Mississippi, 380 U.S. 128, 140 (1965). Alternatively, the United States argues that the district court did not abuse its discretion in refusing to hold the Commonwealth indispensable and in going forward with the case despite the Commonwealth's absence.

We decide this case on mootness grounds and do not reach the other issues.

### III.

Mootness is a jurisdictional defect, rooted in Article III case or controversy considerations. United States v. Reid, 369 F.3d 619, 624 (1st Cir. 2004). Courts cannot, consistent with Article III, wander into the "realm of the advisory and the hypothetical." Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 615 (1st

Cir. 1993). A case is moot when the issues are no longer live or the parties no longer have a legally cognizable interest in the outcome. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). Another way of putting this is that a case is moot when the court cannot give any "effectual relief" to the potentially prevailing party. Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Mootness is closely related to standing, and in fact has been described as the standing requirement placed in a time frame, albeit with some important differences. Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003).[1]

Mootness can arise in different types of situations. A case can of course be moot at the outset by virtue of the facts asserted in the complaint. Or a case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless. See, e.g., Weinstein v. Bradford, 423 U.S. 147, 148-49 (1975) (prisoner's claim against parole board seeking injunctive relief providing him with certain procedural rights in his parole hearing was moot because he was paroled before the appeal was heard). Mootness can arise when the adversarial

---

[1]The idea we rely on today, that appeals are moot when only subsidiary issues, and not the judgment itself, are challenged, in fact could be described as the doctrine of "standing to appeal," although we do not think the difference in labels to be relevant. Charles Alan Wright et. al., 15A Federal Practice and Procedure § 3902, at 63-67 (2d ed. 1992).

parties jointly settle all of the claims in a case. See, e.g., U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 23 (1994); Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 120 (1985) (per curiam). An appeal can also become moot because of a party's own choices about which issues in a case to appeal. See Ashcroft v. Mattis, 431 U.S. 171, 172-73 (1977) (per curiam); see also In re Pub. Serv. Co. of N.H., 879 F.2d 987, 989-90 (1st Cir. 1989) (per curiam) (appeals court has no jurisdiction where plaintiff appeals only one of a lower court's two alternative grounds, because the judgment will stand unless both grounds are overturned).

In Mattis, the plaintiff's son was killed by police officers; the plaintiff sought damages and declaratory relief that the statutes authorizing the officers' actions were unconstitutional, and the lower court held that no damages were available because the officers acted in good faith. 431 U.S. at 171. The plaintiff did not appeal the damages ruling, but did appeal a denial of the declaratory judgment. Id. The Supreme Court held that the plaintiff's decision not to appeal the damages claim mooted the appeal because the only issue left in the case by the declaratory judgment claim -- "whether the defendants would have been liable apart from their defense of good faith" -- was purely "hypothetical" and the plaintiff had no legal rights at stake. Id. at 172.

Here, the Commonwealth appeals its indispensability without challenging the ultimate finding as to disposition of funds by the district court. On its own, the indispensability of the Commonwealth is a purely abstract, hypothetical issue divorced from any practical interests. The Commonwealth's real interest in this interpleader action is in its share of the money; because it agrees with the district court that it deserves no money, it has no legally cognizable interest remaining. It is impossible for this disposition to prejudice the Commonwealth's interests in the interpleader fund in any way, precisely because it agrees that it has no interest in those funds.

The Commonwealth tries to avoid the mootness doctrine by citing two exceptions to it: collateral consequences and capable of repetition yet evading review.

First, the Commonwealth argues that it still has a legally tangible interest because of the collateral consequences of judicial resolution. Although it has no continuing dispute about the funds at issue (the primary item in dispute), it argues that it continues to suffer harm to its sovereign authority because this action has been adjudicated, and a judgment has been handed down, without its presence. The collateral consequences doctrine applies most often in criminal cases, where, for example, some of the consequences of a felony conviction (loss of voting privileges, probation, etc.) remain, despite the fact that the defendant has

been released from jail.  See, e.g., Sibron v. New York, 392 U.S. 40, 55 (1968); see also United States v. Duclos, 382 F.3d 62, 66 (1st Cir. 2004) (collateral consequences are presumed when criminal conviction itself is attacked, although no presumption occurs for appeals to revocation of parole or supervised release).  These types of consequences are continuing harms; they are merely subsidiary to the primary harm of criminal convictions, prison time.  By contrast, a party's emotional interests in a case outcome are not enough of a collateral consequence to stave off mootness.  See Mattis, 431 U.S. at 173.

There is no collateral detriment to the Commonwealth's Eleventh Amendment immunity on the facts here.  The Commonwealth was dismissed as a party vis-à-vis the private parties because of its sovereign immunity, and it has no Eleventh Amendment immunity vis-à-vis the federal government.  See United States v. Mississippi, 380 U.S. 128, 140 (1965).  There is no present collateral detriment.

Second, the Commonwealth relies on the well-known exception from mootness for claims that are capable of repetition yet evading review.  This exception is "narrow."  Cruz v. Farquharson, 252 F.3d 530, 534 (1st Cir. 2001).  This exception normally arises where the underlying facts are inherently temporary such that they will predictably have changed and foreclosed meaningful relief by the time the case has worked its way through the legal system.  See,

e.g., <u>Norman</u> v. <u>Reed</u>, 502 U.S. 279, 288 (1992) (challenge to obstacles to getting on ballot for 1990 election was not moot after that election had ended, because elections do not last long enough for issues to be fully litigated); <u>Roe</u> v. <u>Wade</u>, 410 U.S. 113, 125 (1973) (pregnant woman's challenge to abortion law was not moot even though she had given birth because pregnancy would never last as long as federal court litigation); <u>Becker</u> v. <u>Fed. Election Comm'n</u>, 230 F.3d 381, 389 (1st Cir. 2000) (claim seeking to prevent corporate sponsorship of presidential debates was not moot because issue was sure to arise again in future elections, yet campaign season never lasts long enough to fully litigate issues). Here, there is nothing inherently temporary about the underlying fact situation.[2]

This type of case is capable of repetition: several other cases of the same type, involving the same governmental parties, have come up in Massachusetts federal courts alone within the past few years. See <u>Horizon Bank</u>, 309 F. Supp. 2d at 192. But it does not evade review. The United States can appeal whenever the court dismisses the entire case on the ground that the Commonwealth is indispensable. And the Commonwealth can appeal whenever the court

---

[2]The Commonwealth argues that usually funds are distributed in an interpleader tax case after the judgment and before an appeal can be concluded. Without accepting the premise, we note that our holding turns not on the fact that the funds have been distributed, but on the fact that the Commonwealth concedes that it no longer has a claim to any of the funds.

-14-

refuses to dismiss the entire case <u>and</u> there continues to be an open dispute about the Commonwealth's share of the interpleader funds. Were it not for the fact that the Commonwealth has effectively acknowledged the correctness of the district court's distribution of the interpleaded fund, the appeal would not be moot, and the Commonwealth could assert its contentions.

The mootness doctrine is rooted largely in the idea that courts, because of their distinct institutional competence and role, should not decide abstract questions of law divorced from real factual controversies. <u>See</u> <u>Hall</u> v. <u>Beals</u>, 396 U.S. 45, 48 (1969); Erwin Chemerinsky, <u>Federal Jurisdiction</u> § 2.5, at 126-27 (4th ed. 2003). One might think, as the district court suggested, that the issue of whether a state is an indispensable party in an interpleader action removed to federal court by the federal government would be decided similarly on all possible combinations of facts. But this is not necessarily so.

Putting aside the merits argument of the United States that this is essentially an <u>in rem</u> action not implicating the Eleventh Amendment at all, the remaining indispensability issue is by nature a very fact-specific inquiry that "can only be determined in the context of particular litigation"; possibilities of prejudice and the like must be determined as a "practical matter," not "theoretically." <u>Provident Tradesmens Bank & Trust Co.</u> v. <u>Patterson</u>, 390 U.S. 102, 113-16, 118 (1968); <u>see also</u> Charles Alan

Wright et. al., 7 <u>Federal Practice and Procedure</u> § 1612, at 174 (3d ed. 2001) ("Pragmatic concerns rather than conclusory labels now control. . . . [T]he opinions in most . . . decisions point out the particular competing interests involved in the case."). Indispensability questions turn on specific facts, and that is all the more reason for us to hold this appeal moot.

## IV.

The appeal is **<u>dismissed</u>** on grounds of mootness.