# United States Court of Appeals
## For the First Circuit

No. 13-2209

JODI B. MATT,

Plaintiff, Appellant,

v.

HSBC BANK USA, N.A., ON BEHALF OF THE TRUST FUND AND
FOR THE BENEFIT OF ACE SECURITIES CORP. HOME EQUITY LOAN
TRUST SERIES 2005-HE4 ASSET BACKED PASS THROUGH CERTIFICATES,
WELLS FARGO BANK, N.A., COUNTRYWIDE SECURITIES
CORPORATION, BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO
BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS
COUNTRYWIDE HOME LOANS SERVICING, LP, HSBC BANK USA, N.A.
and ACE SECURITIES CORP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Howard, and Kayatta,
Circuit Judges.

Glenn F. Russell, Jr., with whom Glenn F. Russell, Jr., &
Associates, P.C., was on brief, for appellant.
Courtney L. Benson, with whom James W. McGarry, Chad W.
Higgins and Goodwin Procter LLP, were on brief, for appellees.

April 15, 2015

**TORRUELLA, Circuit Judge.** In an attempt to avert foreclosure proceedings in state court, Plaintiff-Appellant Jodi B. Matt ("Matt") filed this federal case in the District of Massachusetts against Defendants-Appellees HSBC Bank USA, National Association on Behalf of the Trust Fund ("HSBC as Trustee") and for the Benefit of ACE Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset [Backed] Pass Through Certificates ("Trust"), and several other defendants (other creditors and servicers that have previously held rights over the loan). In her complaint, Matt asserts multiple claims arising from the purportedly invalid transfer and assignment of a mortgage granted over her home in Canton, Massachusetts.

While this appeal was pending, Matt and Select Portfolio Servicing, Inc. ("SPS"), a servicer acting on behalf of HSBC as Trustee, entered into a Home Affordable Modification Agreement (the "Loan Modification Agreement"). Pursuant to the Loan Modification Agreement, Matt renegotiated the terms of her existing mortgage loan, and, as a result, her mortgage loan is current and she is no longer subject to any actual or threatened foreclosure proceedings. Consequently, we dismiss this appeal as moot.

## I. Background

The material facts in this case are undisputed. On April 6, 2005, Matt obtained a mortgage loan secured by her property (the "Mortgage") from Northeast Mortgage Corporation

("Northeast"), and executed a promissory note (the "Note") for $200,000 in favor of Northeast. On the same day, Northeast assigned the Mortgage to New Century Mortgage Corporation ("New Century"). This assignment of the Mortgage to New Century was recorded in the Norfolk County Registry of Deeds on December 19, 2006. New Century subsequently assigned the Mortgage to HSBC as Trustee on November 6, 2007. This subsequent assignment was recorded in the Norfolk County Registry of Deeds on or about November 16, 2007.

As of today, HSBC as Trustee is the mortgagee of record. The Note pertaining to the Mortgage followed a different track, but was later conveyed to the Trust. HSBC as Trustee initiated the foreclosure action on behalf of the Trust in state court to which Matt responded with the instant case. We explain the facts in more detail in an attempt to unravel Matt's claims.

**A. The Mortgage and Note**

As stated, Northeast assigned the Mortgage and endorsed the Note to New Century. Thereafter, New Century endorsed the Note in blank so that it became payable to the bearer rather than to a named payee. The Note was then sold and conveyed by New Century into the Trust at some point before September 27, 2005. Then, New Century, which had remained the mortgagee of record, filed for bankruptcy and entered into a bankruptcy court-approved stipulation with Countrywide Home Loans, Inc. ("Countrywide") and several

Countrywide affiliates. The stipulation stated that "Countrywide has serviced and is servicing loans currently pursuant to contractual agreement," and that "Countrywide was appointed as New Century Mortgage's true and lawful attorney-in-fact and granted the ability to exercise the Power on behalf of New Century Mortgage." This "power" included the ability to "execute and file assignments, mortgages, . . . [and] endorsements . . . relating to . . . Defaulted Loans [. . .] ." Acting under said power of attorney on behalf of New Century, Countrywide -- which at that point only held bare record title because the loan itself had been conveyed to the Trust -- assigned Matt's Mortgage to HSBC as Trustee. HSBC then became the mortgagee of record.

## B. The Loan's Servicing and the Filing of the Instant Case

Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP ("Bank of America") serviced the mortgage loan until October 1, 2012, when the servicing rights were transferred to SPS. Matt initially defaulted on the mortgage loan in October 2005, when she failed to make her monthly payments. After bringing her loan current several times, she defaulted on her payment obligations in August 2008, and had made no further payments until the modification. Bank of America sent Matt a "Notice of Intention to Foreclose" on September 14, 2009, which provided Matt with the opportunity to cure her default. Matt did not cure the default.

On January 27, 2010, HSBC as Trustee filed a complaint in the Massachusetts Land Court as a preliminary step to foreclose on the house. On September 23, 2010, Matt filed the instant case. The district court granted summary judgment in favor of Defendants-Appellees and this appeal ensued.

**C. The Appeal**

Matt reiterates her claims on appeal. She argues (1) that she only granted the power of sale of her property to Northeast, not to any other assignee of the Mortgage and Note; (2) that HSBC as Trustee has only proffered a sworn statement by its agent showing that the loan was conveyed to the Trust; (3) that the Mortgage was assigned to the Trust after the date established by the Pooling Service Agreement of the Trust for depositing assets into it, thus never becoming an asset of Trust; (4) that an "Acquisition Memo" showed that the loan had been acquired by the "HE-2" trust rather than the "HE-4" trust, i.e.,the Trust, that was now seeking foreclosure through its Trustee, and thus it must be another trust that holds the assets; (5) that somehow New Century was impeded from transferring its claim in the loan for reason of being in bankruptcy, even though the transfers were done under the supervision and with approval of the bankruptcy court; (6) and, in sum, that "[a]ll [Matt] ever wanted was to glean who it is, precisely, that owns the legal claim to the [Mortgage] to her real property, and precisely who it is that has the legal right and

-5-

authority to accept her monthly principal and interest payments," but that each of those issues invalidates the transfer of the Mortgage and Note from Northeast to HSBC as Trustee.

Matt stresses throughout her opening brief that every argument made referring to the alleged errors committed by the district court is relevant because it affects the district court's conclusion that HSBC as Trustee is the party with "proper jurisdiction and authority to act under the strict requirements of [Mass. Gen. Laws ch.] 244, § 14, to utilize the harsh Massachusetts non judicial foreclosure statue." That is, every argument advanced by Matt concludes that any right HSBC as Trustee may have to act under Mass. Gen. Laws ch. 244, § 14 is void. That section refers to "foreclosure under the power of sale" and provides the procedural and formal requirements to mortgagees seeking such remedies. Finally, Matt perfunctorily reiterates her request for retrospective relief in the form of damages for unjust enrichment, civil conspiracy, and other common law claims, which derive directly from her contention that HSBC as Trustee is not her creditor because each of the aforementioned transfers of the Mortgage and Note are void.

## D. Recent Developments

At oral argument, this Court was blindsided by the fact that the parties had reached some kind of workout agreement many months before and that the loan was current as a result of

settlement negotiations to avoid foreclosure.  We requested the parties to submit a joint stipulation detailing the new agreement and explaining whether this case is moot as a result of this agreement.  The parties could not agree and opted for filing separate statements.  Matt conceded that she had executed the Loan Modification Agreement with SPS after a process in which, on August 30, 2013, "SPS on behalf of HSBC," had received her application for the modification.  HSBC as Trustee included a copy of the Loan Modification Agreement with their statement and argued that Matt's loan has been permanently modified by SPS under the federal Home Affordable Modification Program ("HAMP").[1]  The Loan Modification Agreement defines SPS as the "Lender" and provides that it is intended to modify Matt's existing contractual agreements.  It also: (1) establishes a new principal balance for the mortgage loan, a new maturity date, and a payment and escrow schedule; (2) states that all the original loan documents of the Mortgage are modified by it and that said loan documents are "duly valid, binding agreements, enforceable in accordance with their

---

[1]  HAMP was established by the Secretary of the Treasury under a section of the Troubled Asset Relief Program that "requires the Secretary to 'implement a plan that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures.'"  Markle v. HSBC Mortgage Corp. (USA), 844 F. Supp. 2d 172, 176 (D. Mass 2011) (quoting 12 U.S.C. § 5219(a)); see id. at 176-177 (explaining the eligibility and approval process required under HAMP).  See also In re JPMorgan Chase Mortg. Modification Litig., 880 F. Supp. 2d 220, 225-28 (D. Mass 2012).

terms and are hereby reaffirmed;" (3) establishes that all the terms of the original loan documents remain in full force and that "[Matt] will be bound by and will comply with, all the terms and conditions of the loan documents;" and (4) provides that "[Matt] will cooperate fully with [SPS] in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s), that are necessary or required by [SPS's] procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification . . . ."

Despite reaffirming her loan documents and negotiating a Loan Modification Agreement with SPS, Matt continues to reject that HSBC as Trustee is her valid creditor. In light of the conflicting statements, we ordered the district court to hold an evidentiary hearing to clarify whether: (1) SPS was acting on behalf of HSBC as Trustee when it executed Matt's Loan Modification Agreement, (2) this Loan Modification Agreement applied specifically to the Mortgage and Loan in controversy in the instant case, and (3) Matt is no longer subject to any actual or threatened foreclosure.

The district court held a hearing and found that, while Matt continues to dispute the validity of the transfers and assignments of the Mortgage and Note to HSBC as Trustee, SPS did act on behalf of HSBC as Trustee when it executed the Loan Modification Agreement, that said agreement in fact pertains to the

-8-

Mortgage in controversy in the instant case, and that Matt is no longer subject to any actual or threatened foreclosure. Matt does not dispute these findings.

Faced with this new scenario, we decide this case on mootness grounds and do not reach the merits. Our examination of this controversy is limited to the arguments presented in Matt's opening brief, which are directed at the district court's purported errors in finding that HSBC as Trustee was in a position to exercise foreclosure -- a remedy no longer sought.

## II. Discussion

### A. Lack of jurisdiction

Mootness is a jurisdictional matter. Horizon Bank & Trust v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004). Consequently, it can be raised by a federal court sua sponte. See North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam). The reason for this rule is that an actual controversy must exist at all stages of proceedings, both at the trial and appellate levels. Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97 (1980). "A case becomes moot -- and therefore no longer a 'Case' and 'Controversy' for purposes of Article III -- when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc.,

133 S. Ct. 721, 726 (2013) (per curiam) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)) (some internal quotation marks omitted).

In other words, if a court may not provide "any 'effectual relief' to the potentially prevailing party," the case is moot. Horizon Bank & Trust, 391 F.3d at 53 (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)); see also Pallazola v. Rucker, 797 F.2d 1116, 1128 (1st Cir. 1986) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.") (quoting Rice, 404 U.S. at 246) (internal quotation marks omitted). When a case is moot, "dismissal of the action is compulsory." Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 17 (1st Cir. 2007) (quoting Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)).

Here, "there is literally no controversy left for the court to decide -- the case is no longer 'live.'" ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 53 (1st Cir. 2013) (citing Powell v. McCormack, 395 U.S. 486, 496 (1969)).

## B. There is no Live Controversy

Matt admits that she brought this claim to avoid foreclosure. The eleven counts included in her complaint aimed at establishing that HSBC as Trustee lacked standing to proceed under the Massachusetts power of sale provision contained in Mass. Gen. Laws ch. 244, § 14, and the legality of HSBC's demands for

-10-

payments. Additionally, Matt's opening brief is premised on her desire to avert foreclosure by having us reverse the district court's finding that HSBC as Trustee had standing to pursue such remedy.[2]

Here, foreclosure is no longer sought because of Matt's own actions in pursing and executing the Loan Modification Agreement. Matt reaffirmed her debt with HSBC's servicer and brought her loan current. The validity of the Loan Modification Agreement is not questioned by the parties. Therefore, because "federal courts are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong," we decline to issue any injunctive or declaratory relief and resolve this case on mootness grounds. ACLU of Mass., 705 F.3d at 53 (quoting Spencer v. Kenma, 523 U.S. 1, 18 (1998)). Since the circumstances have evolved in a way that this Court cannot provide

---

[2] "The failure of [HSBC] to provide these particulars, would clearly leave [HSBC], on behalf of the . . . Trust, beyond the ability to claim sufficient interest in [Matt's] mortgage to legally enforce the power of sale . . . ." Appellant's Br. at 23. "[T]herefore, [HSBC] would not be a proper party with jurisdiction and authority under the specific wording of the Massachusetts state statute at issue, to utilize the harsh and draconian non judicial foreclosure process." Id. Matt then goes on to conclude each of her arguments with a similar statement. "[U]nlike the Magistrate Judge's inference that the Defendants are not required to prove their standing to foreclose **judicially**, under the Massachusetts non-judicial statutory construct, [HSBC] must establish its 'jurisdiction and authority' . . . to carry out the Massachusetts non-foreclosure of [Matt's] residence under the state statute . . . ." Id. at 30. For other similar statements see also id. at 34-35, 43, 47, 49, and 51-52.

-11-

effectual relief to the parties, there is no longer a live case or controversy and we lack jurisdiction to issue an advisory opinion as to the parties' rights and Matt's attempt to avoid foreclosure.

Finally, in order for a court to issue declaratory relief, as Matt is now seeking -- having realized that injunctive relief against a non-existent risk of foreclosure is unavailable -- "the facts alleged must show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. at 53-54 (citing Preiser v. Newkirk, 422 U.S. 395, 402 (1975)) (alteration in original) (internal quotation marks omitted).  We find no such showing of a substantial controversy of sufficient immediacy in light of the parties' adherence to the Loan Modification Agreement. Therefore, we decline to consider declaratory relief on the merits.

## C. Other Common Law Claims

Matt mentions in passing that the district court erred in ruling that her claims for civil conspiracy and unjust enrichment were disallowed by the fact that HSBC had established its status as mortgagee.  To support this argument on appeal, Matt simply states that "the Magistrate Judge erred under a Rule 56 analysis, and therefore there remain issues in dispute."  That is the entire extent of her argument.  To say the least, these challenges are presented in a perfunctory and undeveloped manner, and thus, are considered waived. Rodríguez v. Municipality of San Juan, 659 F.3d

-12-

168, 175 (1st Cir. 2011); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). These issues are stated "in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>Zannino</u>, 895 F.2d at 17. This we will not do. <u>Id.</u> Therefore, Matt's bare mentioning of these potential issues does not change our conclusion on mootness.

## III. Conclusion

This appeal is **dismissed** as moot. Costs are taxed against Matt.