USCA1 Opinion

 

 March 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1976 OAKVILLE DEVELOPMENT CORPORATION, TRUSTEE OF THE 10-12 LOPEZ ST. TRUST, Plaintiff, Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Walter Jay Skinner, U.S. District Judge] ___________________ [Hon. Mark L. Wolf, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _________________________ David Hoicka, with whom Hoicka & Associates, P.C. was on ____________ __________________________ brief, for appellant. Edward J. O'Meara, Staff Counsel, FDIC, with whom Ann S. __________________ ______ DuRoss, Assistant General Counsel, Richard J. Osterman, Jr., ______ __________________________ Senior Counsel, John Houlihan, Sarianna T. Honkola, and Edwards & _____________ ___________________ _________ Angell were on brief, for appellee. ______ _________________________ March 4, 1993 _________________________ SELYA, Circuit Judge. Plaintiff-appellant Oakville SELYA, Circuit Judge. ______________ Development Corporation (Oakville) challenges orders issued by two different district judges which had the combined effect of allowing a foreclosure sale to proceed. For the reasons that follow, we dismiss Oakville's appeal as moot. I I Oakville borrowed $78,000 from First American Bank. The loan was evidenced by a promissory note and secured by a second mortgage on a parcel of real property located at 10-12 Lopez Street, Cambridge, Massachusetts. On October 19, 1990, the bank was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. Oakville's loan appeared on the bank's books as an asset. The FDIC published notice to First American's creditors, setting a 90-day deadline for the filing of claims. Because Oakville was mired in a dispute with First American regarding the aforementioned loan, it filed a proof of claim. The FDIC rejected Oakville's claim as untimely and refused to entertain administrative appeals. Oakville did not seek judicial review within the time allotted. See 12 U.S.C. 1821(d)(6)(A) ___ (1988). Some months later, however, Oakville sued in state court based on First American's alleged failure to accept and credit payments on the loan. The FDIC removed the case to federal court and moved for dismissal. The FDIC's motion remains undecided. Because Oakville's payments were substantially in arrears, the FDIC also embarked on foreclosure proceedings. It 2 scheduled a foreclosure sale for May 20, 1992. On May 15, Oakville moved to enjoin the proposed sale. On May 19, the district court (Skinner, U.S.D.J.) issued a temporary restraining order (TRO) stalling the sale. Oakville subsequently failed to submit documents and appear at a hearing. Accordingly, Judge Skinner dissolved the TRO on July 13, 1992. The FDIC readvertised the foreclosure sale, this time stipulating a date of August 12, 1992. Oakville filed an emergency motion to reinstate the TRO.1 The district court (Wolf, U.S.D.J.) denied the motion, determining that the court lacked statutory authority to grant an injunction against the FDIC qua receiver. See 18 U.S.C. 1821(j) (1988). Oakville ___ ___ took an appeal but did not request a stay of the impending sale (although counsel claims that he circulated notices at the auction, warning prospective bidders that an appeal was pending). The property was sold to a third party and has since changed hands. II II It is important to stress that Oakville takes this appeal strictly and solely from two interlocutory orders of the district court: Judge Skinner's order dissolving the TRO and Judge Wolf's order refusing to reinstate the injunction (and, thus, allowing the foreclosure sale to proceed). Hence, the merits are not before us and Oakville's action remains pending ____________________ 1The motion was filed on August 11, 1992. Judge Skinner was on vacation. In his absence, Judge Wolf presided. 3 below. Seen in this light, it is readily apparent that, since the foreclosure sale has now taken place and title to the property rests with a third party, reversing the orders in question would give Oakville no more than a moral victory. Ergo, its appeal is moot. Article III of the Constitution confines the federal courts' jurisdiction to those claims which embody an actual "case" or "controversy." U.S. Const. art. III, 2, cl. 1. It is well established that, in circumstances where a court cannot provide effectual relief, no justiciable case remains and the court must dismiss the appeal as moot. See Mills v. Green, 159 ___ _____ _____ U.S. 651, 653 (1895). This doctrine applies with full force and effect where, as here, a plaintiff appeals from the dissolution of an injunction or the denial of injunctive relief, but neglects to obtain a stay. When, as will often happen, the act sought to be enjoined actually transpires, the court may thereafter be unable to fashion a meaningful anodyne. In such straitened circumstances, the appeal becomes moot. See, e.g., In re Stadium ___ ____ _____________ Management Corp., 895 F.2d 845, 847 (1st Cir. 1990) (holding, in _________________ analogous circumstances, that "[a]bsent a stay, the court must dismiss a pending appeal as moot because the court has no remedy"); In re Continental Mortgage Investors, 578 F.2d 872, 877 ____________________________________ (1st Cir. 1978) (explaining that "[a]n appeal is considered moot if it cannot affect the matter in issue or cannot grant effectual relief"); see also Railway Labor Executives Ass'n v. Chesapeake ___ ____ _______________________________ __________ W. Ry., 915 F.2d 116, 118 (4th Cir. 1990), cert. denied, 111 S. ______ _____ ______ 4 Ct. 1312 (1991); In re Kahihikolo, 807 F.2d 1540, 1542 (11th Cir. ________________ 1987) (per curiam); Holloway v. United States, 789 F.2d 1372, ________ ______________ 1374 (9th Cir. 1986); In re Combined Metals Reduction Co., 557 _____________________________________ F.2d 179, 189 (9th Cir. 1977); In re Information Dialogues, Inc., _________________________________ 662 F.2d 475, 476 (8th Cir. 1981); In re Cantwell, 639 F.2d 1050, ______________ 1053-54 (3d Cir. 1981). III III Appellant offers three counter arguments in an effort to ward off the inevitable. We consider them seriatim. ________ A A Oakville contends that we can grant effective relief even at this late date. Its contention assumes that the sale can be voided because prospective purchasers were notified of Oakville's pending appeal.2 Oakville's premise is wrong. Oakville furnishes no authority to contradict the black letter law that a sale to a good faith purchaser cannot be rescinded in these circumstances. See, e.g., Mass. Gen. L. Ann. ___ ____ ch. 106, 2-702 (West 1990) (explaining that a seller's right to reclaim goods is subject to the rights of a good faith purchaser). Generally speaking, a good faith purchaser is one who purchases assets for value, without fraud, misconduct, or knowledge of adverse claims. In re Bel Air Assocs., Ltd., 706 ____________________________ F.2d 301, 304-05 (10th Cir. 1983); Greylock Glen Corp. v. ____________________ ____________________ 2We address this argument even though the record does not contain a copy of the supposed notice or any other specific information as to its contents or as to the manner in which it was distributed. 5 Community Sav. Bank, 656 F.2d 1, 3-4 (1st Cir. 1981). Knowledge ___________________ of a pending appeal, without more, does not deprive a purchaser of good faith status. Put another way, claims asserted in such an appeal are not "adverse claims" within the meaning of the rule. See Greylock Glen, 656 F.2d at 4 (holding that a bank, ___ ______________ although a party to a pending appeal, was nonetheless a good faith purchaser); In re Dutch Inn of Orlando, Ltd., 614 F.2d 504, ________________________________ 506 (5th Cir. 1980) (holding that a third-party purchaser's knowledge of claims asserted in a pending appeal did not deprive the purchaser of good faith protection); see also Stadium ___ ____ _______ Management, 895 F.2d at 848 n. 4; cf. 11 U.S.C. 363(m) (an __________ ___ appeal of the authorization to hold a bankruptcy sale does not affect the good faith status of an ensuing transaction). Thus, Oakville takes nothing simply by reason of having told likely bidders about its pending appeal. B B Oakville's second basis for claiming that we could still grant effective relief is predicated on the notion that, under Massachusetts law, it has a right to redeem the foreclosed property.3 Thus, its thesis runs, the appeal is alive because an affirmative exercise of redemptive rights will unravel the sale. The infertility of this theory is starkly apparent. As previously remarked, Oakville appeals only the ____________________ 3Whether Oakville has such a right is far from pellucid. In general, Massachusetts law does not provide a right of redemption where the "land has been sold pursuant to a power of sale contained in the mortgage deed," Mass. Gen. L. Ann. ch. 244, 18 (West 1988), as would appear to be the case here. 6 dissolution of the TRO and the district court's subsequent refusal to reinstate it. But, redemption assumes a completed foreclosure not a stalled sale. Thus, whatever state-law right of redemption Oakville might have is independent of the merits of the challenged orders. Indeed, it is the lifting of the TRO and the consequent happening of the foreclosure that allows Oakville to pursue its claimed redemptive remedies. What is more, our contemplation of whatever as-yet-unexercised redemptive right Oakville may enjoy would contravene Article III's prohibition against advisory opinions. See Holloway, 789 F.2d at 1374 ___ ________ (refusing to reach merits of redemption argument where purchaser of property was not a party because to do so would be "an advisory opinion upon a moot question") (citations omitted). C C Appellant also argues that its appeal skirts the jurisdictional bar because the question presented is "capable of repetition, yet evading review." Southern Pac. Terminal Co. v. ___________________________ ICC, 219 U.S. 498, 515 (1911). Although this asseveration ___ fastens upon a recognized exception to general principles of mootness, see, e.g., Caroline T. v. Hudson Sch. Dist., 915 F.2d ___ ____ ____________ _________________ 752, 757 (1st Cir. 1990); In re Grand Jury Proceedings, 814 F.2d ____________________________ 61, 68 (1st Cir. 1987); Anderson v. Cryovac, Inc., 805 F.2d 1, 4- ________ _____________ 5 (1st Cir. 1986), the exception is not a juju, capable of dispelling mootness by mere invocation. Rather, the exception applies only if there is "a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur 7 involving the same complaining party." Murphy v. Hunt, 455 U.S. ______ ____ 478, 482 (1982) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 _________ ________ (1975)). Appellant's case does not come within the margins of this definition. Unlike pregnant women, who are likely to conceive again, see Roe v. Wade, 410 U.S. 113, 125 (1973), or ___ ___ ____ handicapped children, who are likely to require placement in subsequent school years, see Honig v. Doe, 484 U.S. 305, 317-23 ___ _____ ___ (1988), it is highly unlikely that appellant will again secure a mortgage with a federally insured bank that then fails, prompting FDIC involvement and ensuing foreclosure.4 Appellant has not shown, or even alleged, that it has the slightest prospect of suffering this fate anew. Instead, appellant contends that the FDIC's arbitrariness will imperil other property owners. But, even if this contention is true, it is irrelevant: the possibility or even the probability that others may be called upon to litigate similar claims does not save a particular plaintiff's case from mootness. See Lane v. Williams, 455 U.S. ___ ____ ________ 624, 634 (1982); Pallazola v. Rucker, 797 F.2d 1116, 1129 (1st _________ ______ Cir. 1986). Thus, appellant cannot bring its case within the narrow confines of the "capable of repetition, yet evading review" exception. IV IV While most of appellant's claims against the FDIC ____________________ 4The record in this case does not show that appellant owns any other property, has any other mortgage loans, or retains any borrowing power. 8 remain to be litigated below, its claims pertinent to injunctive relief became moot when the property was sold at auction. Although the transgressions of the FDIC may be a tempting subject for soliloquy, for us to pronounce judgment in the absence of any effective remedy would be to wander impermissibly into the realm of the advisory and the hypothetical. Because jurisdictional concerns prevent this court from rendering judgment where no relief is legally possible, we must go no further.5 The appeal is dismissed as moot. Costs to appellee. The appeal is dismissed as moot Costs to appellee _______________________________ _________________ ____________________ 5The FDIC has asked that we order appellant to pay attorneys' fees and double costs. While the question is not free from doubt, we decline, on balance, to impose sanctions. We do, however, award the FDIC its ordinary costs. 9