Ostrander v. City of Manchester        CV-95-559-JD   08/09/96
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Bruce Ostrander

        v.                              Civil No. 95-559-JD

City of Manchester, et al.


                          O R D E R


     The plaintiff, Bruce Ostrander, filed the instant action

under 42 U.S.C. § 1983 alleging that his employer, the City of

Manchester, New Hampshire, its chief of police, Peter Favreau,

and its assistant chief of police, Mark Driscoll, suspended him

from his position as a patrolman in violation of his constitu-

tional right to procedural due process.  Before the court is the

defendants' motion to dismiss (document no. 12).


                        Background[1]

     The plaintiff has been employed as a patrolman with the

Manchester, New Hampshire police department since 1981.

_____

     [1]The court's recitation of the facts relevant to the instant
motion is drawn in large part from the opinion of the arbitrator
who resolved the underlying dispute between the parties.  See
City of Manchester & Manchester Police Patrolmen's Assoc. (Bruce
Ostrander Termination), AAA No. 11 390 00344 96, opinion and
decision ("Arbitration Decision") at 1-3 (Zack, A.) (April 30,
1996).  In all other instances the facts are recited as alleged
by the plaintiff and are cited accordingly.

On or about September 16, 1995, a handgun usually stored on a shelf in the police armory was reported missing. Two days later police officials located the missing handgun and a semi-automatic weapon on the top of a nine-foot-high component of the armory's ventilation system. An internal affairs investigation followed during which investigating officials learned that, <u>inter alia</u>, the plaintiff had on a previous occasion placed the same semi-automatic weapon in a special location to prevent others from tampering with it.

On October 3, 1995, the plaintiff was instructed to meet at some time that day with investigating officials. Soon thereafter the plaintiff told defendant Favreau and other investigators that he had placed the semi-automatic weapon on the ventilation equipment. The plaintiff initially denied involvement with the handgun originally reported missing but, following consultation with a union representative, later admitted to having improperly moved this weapon as well. During discussions with the internal investigators the plaintiff acknowledged that he initially had lied about the handgun. The plaintiff also told investigators that he moved the weapons for safekeeping and that he never intended to remove police property from the armory.

On October 11, 1995, the plaintiff underwent a mandatory polygraph test and, on October 31, 1995, the plaintiff was suspended without pay. Complaint at ¶ 20.

At the time he was suspended, the plaintiff was served with written notice that the department had charged him with a violation of rule and regulation number 6, which requires police employees to be truthful, and rule and regulation number 2, which proscribes conduct unbecoming an officer. The plaintiff acknowledged in writing his receipt of the charges and requested a hearing before the department's disciplinary board. See Complaint at ¶ 23. The plaintiff was neither asked nor permitted to respond to the two charges at the time he was suspended. See id. at ¶ 23.

The plaintiff filed the instant action on November 17, 1995.

The disciplinary board, which consisted of police commissioner Thomas Noonan and patrolman Philip LeBlanc and was chaired by deputy police chief Mark Fielding, conducted a hearing in December 1995, and concluded that the plaintiff had committed the charge of untruthfulness but that the charge of conduct unbecoming an officer was unfounded. The board recommended a six-month suspension without pay.

Defendant Favreau, as the chief of police, adopted the board's findings with respect to the violations but rejected the

3

recommended suspension.  Instead, Favreau elected to terminate the plaintiff and did so by termination letter dated December 27, 1995.  Favreau's decision was upheld by the entire police commission on appeal.  The matter next was submitted to binding arbitration as provided by the collective bargaining agreement.

On April 17, 1996, the arbitrator conducted a hearing to resolve a question agreed upon by the parties: "Did the City terminate Bruce Ostrander without just cause?  If so, what shall be the remedy?"  Arbitration Decision at 1.  By written opinion and decision of April 30, 1996, the arbitrator essentially agreed with the decision of the police department's disciplinary board and reinstated its recommended sanction:

> The termination of Ostrander was for unjust cause.  He shall be reinstated with full seniority and other rights and entitlement, and his termination be converted to a six month suspension without pay as recommended by the Disciplinary Hearing Board.

Id. at 5.

According to the defendants, the police department reinstated the plaintiff with pay retroactive to May 1, 1996, six months from the date he was suspended.  Defendants' Memorandum in Support of Motion to Dismiss ("Defendants' Memorandum") at 3-4 (citing Affidavit of Mark Driscoll, assistant chief of police). The plaintiff returned to work at some point after May 2, 1996. See id.

4

In their motion, the defendants assert that the arbitration decision and the plaintiff's reinstatement to the police force have mooted the sole issue presented by his lawsuit, i.e., whether the disciplinary process was constitutionally inadequate. See Defendants' Memorandum at 4-5. The plaintiff responds that this action raises a constitutional question distinct from those resolved through arbitration and "capable of repetition, yet evading review." Plaintiff's Amended Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment ("Plaintiff's Memorandum") at 19-21.

Article III of the Constitution limits the court's jurisdiction to the resolution of actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir. 1993). The court lacks the authority "to issue advisory opinions . . . [or] to decide questions that cannot affect the rights of litigants in the case before [it]." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) (citations omitted). Although an action may present a live controversy at the time of filing, subsequent events may render the action moot. See, e.g., Kremens v. Bartley, 431 U.S. 119, 129 (1977) (constitutional challenge to statute rendered moot by

5

enactment of superseding statute); Board of License Comm'rs v. Pastore, 469 U.S. 238, 239 (1985) (per curiam) (lawsuit challenging restrictions placed on business rendered moot by closure of business); RESTORE: The North Woods v. United States, No. 95-37-JD, slip op. at 7-8 (D.N.H. Aug. 4, 1995) (lawsuit challenging government's admitted violation of Endangered Species Act rendered moot by government's subsequent compliance with act). When no case or controversy exists, a claim is moot because its resolution would not affect the parties' legal interests. Air Line Pilots Ass'n v. UAL Corp., 897 F.2d 1394, 1396 (7th Cir. 1990); see Oakville Dev. Corp., 986 F.2d at 613; New Bank of New England, N.A. v. Tritek Communications, Inc., 143 F.R.D. 13, 17 n.1 (D. Mass. 1992). The court must dismiss moot claims. Oakville Dev. Corp., 986 F.2d at 613.

An exception to the mootness doctrine attaches where the conduct being challenged is "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam). In order to invoke the exception, the plaintiff "must show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" Boston Teachers Union, Local 66 v. Edgar, 787 F.2d 12, 17 (1st

Cir. 1986) (quoting <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982) (per curiam)).  <u>See</u>, <u>e.g.</u>, <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 546-47 (1976) (short-lived restrictive orders on press coverage of criminal trials capable of repetition, but evading review); <u>Roe v. Wade</u>, 410 U.S. 113, 125 (1973) (length of gestation period sufficiently short so as to preclude appellate review of claims concerning a woman's right to terminate pregnancy).  Finally, contentions that other parties could be subject to future violations are insufficient to trigger the exception.  <u>Oakville Dev. Corp.</u>, 986 F.2d at 615 ("the possibility -- or even the probability -- that others may be called upon to litigate similar claims does not save a particular plaintiff's case from mootness").

The plaintiff's lawsuit is moot.[2]  The arbitrator has determined the nature and extent of his wrongdoing and, in turn, ordered a sanction which coincided with that originally handed down by police officials on October 31, 1995, <u>i.e.</u>, a suspension without pay.  Even assuming that the plaintiff initially was suspended without due process, <u>see</u> Complaint at 2 (citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532 (1985)), the

---

[2]Parenthetically, the plaintiff tacitly acknowledges that his lawsuit is not justiciable by arguing that the issue presented is capable of repetition but evading review -- a judicial <u>exception</u> which permits courts to consider moot cases under certain circumstances.

arbitrator found that the suspension was the appropriate remedy and, as a result, the plaintiff has not suffered the harm he claims resulted from the alleged deprivation of process.[3]

The court also finds that the capable of repetition but evading review exception cannot as a matter of law attach in this case. The record contains no factual averments which, liberally construed, "would demonstrate a reasonable expectation that the same [plaintiff] would be subjected to the same action again.'" Boston Teachers Union, Local 66, 787 F.2d at 17 (emphasis supplied) (quoting Murphy, 455 U.S. at 482 (1982) (per curiam)). Instead, the plaintiff attempts to invoke the exception by suggesting that other police department employees may face similar deprivations in the future:

> The issue before this Court is whether or not the MPD can suspend an officer without pay and without due process . . . .
> Plaintiffs have no question that this Court's dismissal of this action on mootness will be viewed by Defendants as a victory and will lead the Defendants to suspend yet more MPD officers without pay and without due process. Plaintiffs can assure this Court that if this question is not resolved by this case, it is an issue which will be before the Court again.

Plaintiff's Memorandum at 19-20. The capable of repetition exception is litigant-specific and, as such, the plaintiff cannot

_____

[3]The plaintiff has not in his complaint challenged the constitutionality of the administrative process and arbitration proceedings which followed the October 31, 1995, suspension without pay.

proceed with a moot case simply because one or more of his colleagues may face similar circumstances in the future. To the extent the plaintiff wishes to litigate on behalf of similarly situated officers, he still would need to individually satisfy the standing requirements as well as the criteria set forth in Rule 23. See, e.g., Weisburgh v. NH Savs. Bk. Corp., No. 90-227-B, slip op. at 6-7 (D.N.H. Sept. 30, 1993). Finally, the plaintiff cannot evade Article III's case and controversy requirement by casting his claim as if he were seeking a declaratory judgment, i.e., "[p]laintiff requests this Court that the City of Manchester can not suspend a police officer without pay prior to complying [sic] the Loudermill requirements." Complaint at 2 (emphasis in original). See generally Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1514 (9th Cir. 1994) (declaratory relief available only "when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions" (citations omitted)).[4]

---

[4]The court's jurisdictional inability to adjudicate this lawsuit does not, as the plaintiff suggests, forever immunize the defendants' allegedly unconstitutional practice of immediately suspending officers without pay. The court notes that on November 17, 1995, the plaintiff had been terminated from his job in an allegedly unconstitutional manner but had not yet gone before either the disciplinary board or the arbitrator. Thus, on the day he filed the lawsuit the plaintiff could have requested immediate relief from what he alleges was an unconstitutional

<u>Conclusion</u>

The plaintiff's case is moot and, as a result, the court lacks jurisdiction over this action.

The defendants' motion to dismiss (document no. 12) is granted. In light of this ruling, all other pending motions are denied as moot. The clerk shall close the case.

SO ORDERED.


                                        _____
                                        Joseph A. DiClerico, Jr.
                                        Chief Judge
August 9, 1996

cc:  Kenneth J. Gould, Esquire
     Donald E. Gardner, Esquire

_____

deprivation of his employment. For example, the plaintiff could have sought a preliminary injunction barring suspension of his salary and benefits until the defendants provided whatever process was then due. Such an approach presumably would satisfy Article III's requirement that litigants challenge an unlawful practice only at a time in which they can state a cognizable injury from that practice.

10