**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

————————————————————

**BAP NO. PR 19-023**

————————————————————

**Bankruptcy Case No. 15-04548-MCF**

————————————————————

**LUIS MANUEL RUIZ RUIZ,**
**d/b/a Lowy Farm,**
**Debtor.**

————————————————————

**MILK INDUSTRY REGULATORY OFFICE**
**OF THE COMMONWEALTH OF PUERTO RICO,**
**a/k/a ORIL,**
**Appellant,**

**v.**

**LUIS MANUEL RUIZ RUIZ,**
**d/b/a Lowy Farm,**
**Appellee.**

————————————————————

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Mildred Cabán, United States Bankruptcy Judge)**

————————————————————

**Before**
**Hoffman, Fagone, and Panos,**
**United States Bankruptcy Appellate Panel Judges.**

————————————————————

**Edward W. Hill Tollinche, Esq., on brief for Appellant.**
**Homel A. Mercado-Justiniano, Esq., on brief for Appellee.**

————————————————————

**June 10, 2020**

————————————————————

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Luis Manuel Ruiz Ruiz (the "Debtor"), a dairy farmer and a chapter 12 debtor, moved the bankruptcy court for an order authorizing him to lease his milk quota to a third party. The Milk Industry Regulatory Office of the Commonwealth of Puerto Rico—often known by its Spanish language acronym, ORIL—received proper notice of that motion, assumed that the bankruptcy court would deny it, and decided to remain quietly on the sidelines. ORIL's assumption turned out to be incorrect, as the court issued an order granting the motion without opposition. ORIL then moved for reconsideration, attempting to clear the high hurdle for that type of relief. The bankruptcy court issued an order denying ORIL's motion. In this appeal, ORIL challenges both orders. We **AFFIRM** both.

## BACKGROUND

### I. The Bankruptcy Filing

The Debtor, who operated a dairy farm under a license issued by ORIL, filed a chapter 12 petition in the U.S. Bankruptcy Court for the District of Puerto Rico in 2015. On his schedules, the Debtor indicated he owned "56,321 liters of bi-weekly milk quota," which he valued at approximately $845,000. Under his confirmed chapter 12 plan, the milk processing plant that purchased the Debtor's raw milk was required to remit weekly payments to the trustee.

### II. The Temporary Suspension of the Debtor's Milk License

While the Debtor's bankruptcy case was pending, ORIL issued an administrative order temporarily suspending the Debtor's milk license based on a presumption of "milk trafficking." Two days later, an administrative complaint was filed with ORIL seeking to revoke the Debtor's milk license permanently. Evidentiary hearings in the administrative proceeding followed.

### III.    The Adversary Proceeding and the Settlement Agreement

The Debtor then filed a complaint in his bankruptcy case against ORIL, seeking damages

for alleged violations of the automatic stay and injunctive relief.  At a hearing on the Debtor's

request for a preliminary injunction, the parties informed the court they had reached an

agreement which granted the Debtor a conditional milk license and settled the adversary

proceeding.  The parties' agreement was memorialized by the court in a "minute entry" as

follows:

> Pursuant to the parties' agreement made in open court, the adversary case (18-00096) is dismissed <u>with</u> prejudice.  The milk license is *re-activated*, on a conditional basis, subject to ORIL's inventory of the cows and Debtor's milk production, as soon as possible, and *subject to a final judgment in the administrative-agency proceedings.*

(emphasis added).  A judgment dismissing the complaint with prejudice followed.  The Debtor's

license was reactivated and deliveries of milk to the processing plant resumed.

### IV.    The ORIL Revocation Order

Shortly thereafter, ORIL issued a Resolution and Order in the administrative proceeding

(the "ORIL Revocation Order") revoking the Debtor's milk license and directing the Debtor to

sell his milk quota within 60 days.  Both the Debtor's request to ORIL for reconsideration and

his subsequent appeal to the Puerto Rico Court of Appeals were unsuccessful.  The Debtor then

filed a petition for certiorari with the Supreme Court of Puerto Rico.[1]

### V.    The Motion for Authority to Lease Milk Quota and Related Proceedings

The ORIL Revocation Order had important implications for the Debtor's effort to obtain

a discharge under chapter 12 in that the Debtor's deliveries to the milk processing plant were

---

[1] The petition for certiorari was pending at the time the bankruptcy court entered the orders at issue in this appeal.  The current status of that petition is not apparent from the record.  That gap in the record does not, however, influence our disposition of ORIL's appeal.

canceled and his income from raw milk sales ceased. Needing a source of income to fund his plan, the Debtor filed a motion ("Motion to Lease") seeking authority to enter into a lease of 53,000 liters of his milk quota with a third party (the "Lease"). The term of the Lease would begin when the bankruptcy court approved the motion and the Debtor "presented" the approved lease to ORIL, and would continue for six months. The Debtor stressed that ORIL had issued an order "cancelling" his milk license and he was appealing that decision, but in the interim he needed the income from the Lease to make his plan payments. The motion included a "notice" as required by Puerto Rico Local Bankruptcy Rule 9013-1(c)(1) that objections were due within 14 days and a warning that if no objections were filed within the time allowed, the motion "w[ould] be deemed unopposed and m[ight] be granted unless: (i) the requested relief [wa]s forbidden by law; (ii) the requested relief [wa]s against public policy; or (iii) in the opinion of the court, the interest of justice require[d] otherwise." Although the motion was properly served on ORIL's counsel of record in the case, neither ORIL nor any other interested party filed an objection to the Motion to Lease.

Eighteen days later, the bankruptcy court, without a hearing, entered an order on the Motion to Lease (the "Order Approving Lease") providing: "Due notice having been given, there being no opposition, and good cause appearing thereof, the motion is hereby granted." Having received bankruptcy court approval, the Debtor and the lessee then executed a "Notarized Milk Quota Lease Contract" which they filed with ORIL on February 20, 2019 as required by an ORIL regulation. However, the Lease was never actually implemented, and the 6-month term of the Lease expired on or about August 20, 2019 during the pendency of this appeal.

Despite its failure to object to the Motion to Lease, ORIL filed a motion seeking reconsideration of the Order Approving Lease under Rule 59(e) and Rule 60 ("Motion to

Reconsider").[2] ORIL argued that the bankruptcy court's ruling constituted a manifest error of law because, under statutory and regulatory authorities, milk quota leases must be between licensed producers and cannot exceed 5,000 quarts absent extraordinary circumstances. The Debtor, ORIL maintained, no longer possessed a valid license by virtue of the ORIL Revocation Order. Moreover, ORIL claimed, the Lease exceeded the 5,000-quart limit set forth in P.R. Laws Ann. tit. 5, § 1136. ORIL did not explain, or even acknowledge, its failure to object to the Motion to Lease within the prescribed time period.

The Debtor objected to the reconsideration request, insisting the Lease did not exceed "legal limits" or otherwise violate any state laws or regulations. He also argued the Motion to Reconsider should be denied as ORIL had "ample opportunity" to object to the Motion to Lease, but instead "decided to sit and do nothing."

On March 8, 2019, the bankruptcy court entered an order directing ORIL:

> to show cause why its motion for reconsideration should not be denied for failure to object to the motion requesting leave to lease milk quota and why it should not be bound to the stipulated terms reached by the parties granting a conditional license to the Debtor until final judgment in the administrative-agency proceedings.

ORIL filed a response to the show cause order, asserting for the first time that its failure to oppose the Motion to Lease was the result of "excusable neglect." It did not deny it had received notice of the Motion to Lease but claimed that, given the entry of a "final judgment" in the administrative proceedings revoking the Debtor's license—i.e., the ORIL Revocation Order—

---

[2] Unless expressly stated otherwise, all references to "Rule" are to the Federal Rules of Civil Procedure and references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. All references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

ORIL "believed that the motion would [be] denied," and it was therefore unnecessary to respond to it.

On April 15, 2019, without a hearing, the bankruptcy court entered an order denying the Motion to Reconsider ("Order Denying Reconsideration"), stating:

> Upon review of ORIL's Motion Showing Cause (Docket No. 116), the Court denies the motion for reconsideration (Docket No. 106) because the parties agreed that the Debtor's milk license is re-activated until a final judgment of the administrative-agency proceedings. Debtor is currently seeking review from the appellate courts on the administrative agency's decision to revoke the license. Until Debtor exhausts his appeal rights, Debtor is authorized to use the milk license based on the parties' agreement. The Court understood from the parties' agreement that the Debtor could exhaust his appeal[] rights from any adverse ruling. Nevertheless, ORIL failed to promptly object to the Debtor's Motion Requesting Leave to Lease the Milk Quota (Docket No. 103). Debtor indicated in his motion that he notified ORIL and CM/ECF notified electronically the motion to ORIL. ORIL took no action to oppose Debtor's motion. Good cause has not been shown to cause reversal of the order approving the lease of the milk quota.

This appeal followed.

## APPELLATE JURISDICTION

### I. Finality

We may consider appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157.]" 28 U.S.C. § 158(a)(1); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). Whether viewed independently or considered together, the Order Approving Lease and the Order Denying Reconsideration carry the indicia of a final order entered in a case or proceeding. See 28 U.S.C. § 157(b)(2)(M) (specifying that "orders approving the use or lease of property" are core proceedings). Those orders definitively disposed of the parties' dispute about the Lease in the context of the chapter 12 case. Cf. Ritzen Grp., Inc., 140 S. Ct. at 586. We perceive nothing in

6

the record suggesting that the bankruptcy court had additional work to do on this particular matter, and the parties do not suggest otherwise. This aspect of the Panel's jurisdiction is not in question.

## II.    Mootness

Finality, however, is not the sole determinant for establishing appellate jurisdiction. Formatech, Inc. v. Sovereign Bank (In re Formatech, Inc.), 483 B.R. 363, 367 (B.A.P. 1st Cir. 2012). Mootness will also deprive us of jurisdiction to review a final order. See Richmond v. Sovereign Bank (In re Formatech, Inc.), BAP No. MW 12-013, 2013 WL 87406, at *1 (B.A.P. 1st Cir. Jan. 8, 2013) (citation omitted) (holding that Panel lacked jurisdiction due to mootness).

"Mootness is a jurisdictional defect, rooted in Article III case or controversy considerations." Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (citation omitted). "A case is moot when the issues are no longer live or the parties no longer have a legally cognizable interest in the outcome." Id. (citing City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." Id. (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)). "For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology of Cal., 506 U.S. at 12 (citation omitted).

Here, the record triggered some mootness concerns given that the Lease, which gave rise to the underlying dispute, was never implemented and expired by its terms. Therefore, in January 2020, the Panel issued an order to show cause directing the parties to state their positions

7

regarding mootness. Both ORIL and the Debtor filed responses, arguing that the issues on appeal are not moot.

The Debtor asserts that an affirmance by the Panel would have "a real and tangible effect in his [ ] reorganization and subsequent courses of action in his bankruptcy case." According to the Debtor, ORIL did not have discretion to "deny" the Lease and, in the absence of a stay, ORIL was required to comply with the Order Approving Lease and "register[ ]" the lease. Therefore, the Debtor maintains, if the Panel affirms the Orders, he would "be able to seek a remedy for ORIL's violation of [the Order Approving Lease]." The Debtor appears to be arguing that an affirmance of the Order Approving Lease will enable him to seek from the bankruptcy court some form of sanction or other remedy against ORIL for violating the court's prior orders. But, as the prevailing party below, the Debtor already has this right, and even were we to dismiss the appeal on mootness grounds, that right would remain unaffected. In any event, because we ultimately affirm the decision of the bankruptcy court on the merits, it is not necessary to further address the Debtor's argument regarding mootness or to consider the legal effect of the Order Approving Lease as it may relate to any future remedy that may be sought by the Debtor.

ORIL, on the other hand, concedes the appeal appears moot "on the surface," but attempts to invoke an exception to the mootness doctrine that permits review of issues capable of repetition, yet evading review. See Marek v. Rhode Island, 702 F.3d 650, 654 (1st Cir. 2012) (citing S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911) and discussing the contours of this exception to the mootness bar); Oakville Dev. Corp., v. F.D.I.C., 986 F.2d 611, 615 (1st Cir. 1993) (same). This exception "only applies if there is some demonstrated probability that the same controversy, involving the same parties, will reoccur, and if the challenged action would evade review because it is in its duration too short to be fully

8

litigated prior to cessation or expiration." Marek, 702 F.3d at 654 (citations omitted) (internal quotation marks omitted).

According to ORIL, in light of the bankruptcy court's ruling in the Order Denying Reconsideration that the Debtor was authorized to use his milk license until he exhausted his appeal rights, the Debtor could file another motion seeking to lease his milk quota at any time while his petition for certiorari remains pending before the Puerto Rico Supreme Court.

We are unpersuaded that this is one of the exceptional circumstances in which the issues on appeal are "capable of repetition, yet evading review." See Oakville Dev. Corp., 986 F.2d at 615 (citation omitted); see also ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 56-57 (1st Cir. 2013). Although it is possible the Debtor could, in the future, ask the bankruptcy court to approve another lease of his milk quota, ORIL has not demonstrated that the issues it raises in this appeal would "evade review" in the context of such a motion. See Marek, 702 F.3d at 654. On the contrary, if the Debtor were to bring a new motion in the bankruptcy court, ORIL would have an opportunity to raise such issues by filing an objection to that motion. This is not an exceptional situation and, while it is theoretically possible that a similar situation could arise in the future, there has been no showing that that is probable.

Further, we are not convinced we could fashion an effective remedy if we were to reverse the Order Approving Lease. As the Lease was never implemented and the 6-month term has long since expired, reversing the Order Approving Lease would appear to serve no purpose for any party. Less clear is whether a reversal of the Order Denying Reconsideration—in which the bankruptcy court ruled that the Debtor was "authorized to use the milk license based on the parties' agreement" until the Debtor "exhaust[ed] his appeal rights"—could possibly provide ORIL with any effective remedy.

9

Although our jurisdiction is not free from doubt, the First Circuit authorizes us to bypass thorny jurisdictional issues where, as here, the merits questions are answered by reference to settled, controlling law. See Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 n.7 (1st Cir. 2004); see also Giancola v. Johnsondiversey, 157 F. App'x 320, 321 (1st Cir. 2005) ("In the interests of judicial economy, we now by-pass that potentially thorny [jurisdictional] issue to reach the relatively easy merits of this appeal.") (citation omitted). Thus, we advance to a discussion of the merits, which we perceive as relatively straightforward.

## STANDARD OF REVIEW

A trial court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. See Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267, 269 (1st Cir. 2010). Usually, a bankruptcy court's order authorizing the use, sale, or lease of property of the estate under § 363 is reviewed for an abuse of discretion. See Rogers v. Gladstone (In re Bardos), BAP No. CC-15-1217-FDKu, 2016 WL 1161225, at *4 (B.A.P. 9th Cir. Mar. 23, 2016) (citation omitted). Where, however, the appellant fails to object and the court orders the requested relief, the appellant's arguments are reviewed only for "plain error." See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 30 (1st Cir. 2015). An order denying a motion for reconsideration is reviewed for a "manifest abuse of discretion." See Rodriguez Rodriguez v. Banco Popular de P.R. (In re Rodriguez Rodriguez), 516 B.R. 177, 183 (B.A.P. 1st Cir. 2014) (citation omitted).

10

**I.    Applicable Standards**

**A.    Standards Governing Chapter 12 Debtor's Lease of Estate Property**

With a few exceptions not relevant here, chapter 12 debtors in possession have all of the rights, powers, functions, and duties of a trustee.  11 U.S.C. §§ 1203, 1204, 1207(b).  These include the right to continue to operate the debtor's farm in the ordinary course of business, <u>see</u> 11 U.S.C. § 1203, and the right to use, sell, or lease property of the bankruptcy estate both "in the ordinary course of business" and "other than in the ordinary course of business."  <u>See</u> 11 U.S.C. § 363(b)(1) & (c)(1).

Activities that are in the ordinary course of the debtor's farming business may be conducted without first obtaining court approval, but any use, sale, or lease of estate property outside the ordinary course of the debtor's business requires notice and a hearing.  <u>See</u> 11 U.S.C. § 363(b)(1) & (c)(1).  Courts usually apply a "business judgment test" when considering whether to authorize a debtor-in-possession's use, sale or lease of property of the estate, and will approve the motion "where the debtor has used reasonable business judgment and articulated a business justification for such use."  <u>In re SW Bos. Hotel Venture, LLC</u>, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010) (citing <u>In re Chateaugay Corp.</u>, 973 F.2d 141, 143 (2d Cir. 1992)).[3]

**B.    Notice Requirements Under P.R. Local Rule 9013-1(c)(1)**

In the U.S. Bankruptcy Court for the District of Puerto Rico, the Bankruptcy Code's "notice and a hearing" requirements are implemented by Local Bankruptcy Rule 9013-1.

---

[3] Although neither the Debtor nor the bankruptcy court cited § 363 or any other legal authority for granting the Motion to Lease, § 363 provides the appropriate statutory basis for the requested relief.

See Nieves Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854, 865 (B.A.P. 1st

Cir. 2017). This local rule requires that all motions contain a notice advising interested parties of

the time to respond to the motion and a warning that:

> If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

P.R. LBR 9013-1(c)(1); see also Martínez-Rivera v. Scotiabank, No. 16-1150 (SEC), 2016 WL

8671837, at *3 n.6 (D.P.R. Sept. 30, 2016) (discussing P.R. LBR 9013-1(c)(1)).

### C. Motions for Reconsideration

ORIL sought reconsideration of the Order Approving Lease under both Rule 59(e) and

Rule 60(b), made applicable in bankruptcy proceedings by Bankruptcy Rules 9023 and 9024,

respectively. To prevail on a Rule 59(e) motion to alter or amend a judgment, the moving party

must establish "a manifest error of law or present newly discovered evidence." Landrau-Romero

v. Banco Popular de P.R., 212 F.3d 607, 612 (1st Cir. 2000) (citation omitted). Rule 60(b)(1)

provides that the bankruptcy court may relieve a party from a final judgment, order or

proceeding if the movant successfully establishes "(1) mistake, inadvertence, surprise, or

excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Under either rule, "the granting of a motion for

reconsideration is an extraordinary remedy which should be used sparingly." In re Nieves

Guzmán, 567 B.R. at 863 (citations omitted) (internal quotation marks omitted).

### II. The Bankruptcy Court Did Not Commit Plain Error in Granting the Motion to Lease

In the Motion to Lease, the Debtor indicated he was seeking to lease 53,000 liters of milk

quota to a third party because he needed the income from the Lease to make his plan payments.

He also complied with the notice requirements of Local Rule 9013-1(c)(1) by including at the end of the Motion to Lease a "notice" indicating that any objections were due within 14 days and that motion "will be deemed unopposed and may be granted" in the absence of any timely objections. ORIL was notified of the motion through the CM/ECF system and by regular mail to its attorney. Despite the clear warning contained in the notice, ORIL decided to take no action within the 14-day period to oppose the Motion to Lease. After the expiration of the deadline for objections, the bankruptcy court determined that there was "good cause" to grant the Motion to Lease. Under the circumstances, we easily conclude that this determination of "good cause" was equivalent to a determination that the relief requested was not forbidden by law or against public policy and that the interests of justice did not preclude the relief sought.

Although ORIL argues on appeal that the relief the Debtor requested in the Motion to Lease should not have been granted because it was prohibited by statutory and regulatory authorities governing milk quota leases, it failed to timely raise those issues in an objection to the Motion to Lease despite having notice of the motion. Rather, it waited until the bankruptcy court entered an order with which it disagreed, and then presented those issues for the first time in a motion to reconsider. The consequence of this tactical decision is clear: the issue has not been "preserved for appeal." See United States v. Tanco-Pizarro, 892 F.3d 472, 479 (1st Cir. 2018) ("[A]rguments unveiled for the first time in a reconsideration motion are not preserved for appeal."); Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011) ("When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal."); Iverson v. City of Bos., 452 F.3d 94, 104 (1st Cir. 2006) ("The presentation of a previously unpled and undeveloped argument in a motion for reconsideration

13

neither cures the original omission nor preserves the argument as a matter of right for appellate review."); Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) ("Litigation is not a game of hopscotch.  It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling.").  Thus, by failing to object to the Motion to Lease, ORIL has forfeited its right to raise on appeal arguments relating to whether the Lease was prohibited by statutory and regulatory authorities.  See Hamer v. Neighborhood Hous. Servs. of Chi., 138 S. Ct. 13, 17 n.1 (2017) (explaining that "[f]orfeiture is the failure to make the timely assertion of a right").

Forfeited, or unpreserved, claims are reviewed only for "plain error."  See Sparkle Hill, Inc., 788 F.3d at 30 (ruling that where appellant failed to object in the lower court, appellant's arguments on appeal were subject "[a]t best" only to "plain error review"); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 35 (1st Cir. 2006) (same); Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 102 (1st Cir. 2003) ("In [the First Circuit], claims 'forfeited through ignorance or neglect' may still be subject to plain error review on appeal.") (citation omitted); see also United States v. Méndez-Báez, 927 F.3d 39, 41 (1st Cir. 2019) ("When a party has not preserved the procedural issues raised on appeal by objecting in the district court, we review only for plain error.").  To succeed under plain error review, an appellant must establish: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (citations omitted).  "Plain error review is 'extremely demanding,' and 'in [the First Circuit], it is rare indeed for a

panel to find plain error in a civil case.'" Sparkle Hill, Inc., 788 F.3d at 30 (citation omitted).

Applying these exacting standards, we conclude there is no plain error here.

**III.     The Bankruptcy Court Did Not Abuse Its Discretion in Denying the Motion to Reconsider**

ORIL argues that the bankruptcy court should have vacated the Order Approving Lease

under Rule 60(b) because its failure to oppose the Motion to Lease was due to excusable neglect.

To support this argument, ORIL contends that, as the Debtor was no longer permitted under

Puerto Rico law and regulations to "transact with his quota" upon issuance of the ORIL

Revocation Order revoking his license, ORIL "assumed" the bankruptcy court would give the

ORIL Revocation Order "preclusive effect" and deny the Motion to Lease. Therefore, "from

ORIL's vantage point, there was no need for it to do anything further." These circumstances,

ORIL claims, meet the excusable neglect standard set forth in Pioneer Inv. Servs. Co. v.

Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).[4] We disagree.

ORIL's asserted reason for failing to oppose the Motion to Lease is unavailing. After

receiving P.R. LBR 9013-1(c)(1) notice of the Motion to Lease, ORIL made a conscious and

informed choice not to respond to the motion based on the mistaken assumption that the motion

would be denied. However, "inadvertence, ignorance of the rules, or mistakes construing the

rules do not usually constitute 'excusable' neglect[.]" Pioneer, 507 U.S. at 392; see also Edward

H. Bohlin Co. v. Banning Co., 6 F.3d 350, 357 (5th Cir. 1993) ("[A] court would abuse its

discretion if it were to [use] Rule 60(b)(1) when the reason asserted as justifying relief is one

---

[4] This standard requires the court to consider the relevant circumstances surrounding a party's omission, including: (1) danger of prejudice to the non-moving party; (2) the length of the delay; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer, 507 U.S. at 395.

attributable solely to [a party]'s carelessness with or misapprehension of the law or the applicable rules of court."). It was incumbent upon ORIL to oppose the Motion to Lease if it thought the requested relief was prohibited by Puerto Rico law or otherwise. Relief from judgment on grounds of mistake, inadvertence, and excusable neglect "does not permit litigants and their counsel to evade the consequences of their legal positions and litigation strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous." McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc, 298 F.3d 586, 595 (6th Cir. 2002); see also U.S. Commodity Futures Trading Comm'n v. Kratville, 796 F.3d 873, 896 (8th Cir. 2015). "[A] motion for reconsideration is not a vehicle by which a party may attempt to overcome its own procedural failures" and does not permit the losing party to advance arguments they could have, and should have, presented to the bankruptcy court prior to the entry of the subject order. In re Nieves Guzmán, 567 B.R. at 866; see also In re Sciacca, No. 16-26421-B-7, 2018 WL 4945715, at *3 (Bankr. E.D. Cal. Oct. 9, 2018) (ruling that, where debtor failed to object to a motion to sell, arguments made in the debtor's motion for reconsideration were "untimely, improper, and forfeited").

In short, we do not see any neglect here, let alone excusable neglect. Instead, we see a calculated decision by a litigant. It follows, then, that ORIL was not entitled to Rule 60(b) relief. As such, the bankruptcy court did not abuse its discretion when it denied the Motion for Reconsideration.

## CONCLUSION

For the reasons set forth above, we conclude that the bankruptcy court did not commit plain error when it summarily granted the Motion to Lease. We also conclude that the

bankruptcy court did not abuse its discretion in refusing to vacate its prior order.  We **AFFIRM**

both of the orders on appeal.